All right, Mr. Mobley, let me proceed. Thank you, Your Honor. May it please the Court. Material facts in this case remain under dispute, so summary judgment is inappropriate, and this Court should ensure that a jury is empowered to fulfill its constitutional role and settle those factual disputes. In particular, the video in this record is considerably more ambiguous than how the District Court portrayed it. Quite simply, what we see in the video is open to interpretation. And at the summary judgment stage, it's not for the judge to interpret evidence. That's the jury's job at trial. Here, the District Court watched the video and decided it provided enough evidence to show that probable cause existed for the defendant officers to arrest Rodney Brown and was therefore determinative. But that's overselling what the video actually shows, and it ignores contradictory evidence elsewhere in the record. And where a video doesn't wholly or blatantly contradict the non-moving party's view, the Court must not grant summary judgment based on the video. Rodney Brown was arrested for violating the City of St. Louis' Peace Disturbance Ordinance. The defendants in the District Court claim that the ordinance applied to what Mr. Brown did before he was arrested. But since 1976, the ordinance has been limited in its application by the Missouri Supreme Court. In the Tinker case, the Court held that the Peace Disturbance Ordinance can only constitutionally ban conduct that is, quote, intended to and reasonably probable to incite the other people present to immediate violence, end quote. Federal courts in this circuit have gone on to apply this standard in cases involving the Peace Disturbance Ordinance, and they have done so consistently. Given the Missouri Supreme Court's role as the ultimate interpreter of Missouri law, this limitation on the application of the ordinance is unambiguous in contrast to the video in the record. So taking a look at that language from Tinker, you know, I watched the video probably three or four times over the course of preparing for the argument, and it looked like your client and another rally-goer were, maybe they were a foot apart. I know there's some dispute about the nose-to-nose, but they were clearly like a foot or at most two feet apart, and they were screaming at each other. I couldn't make out what they were saying, but they were Why can't we say there's acts or conduct inciting violence or intended to provoke others to violence? Because Mr. Brown was not doing, so I think that there are two issues. First, you know, whether standing and yelling aggressively is enough to incite someone to violence, I don't think that it is. I think that the... Even if you're yelling expletives at somebody, racist comments, you don't think that's enough to incite somebody to violence? Well, yes, I think that that is, but we don't hear the words in the video. We don't know what they are yelling about. And... But it didn't, just to be honest, it didn't look like they were going out and getting a cup of coffee. They were obviously very angry at each other. Yes, this is a heated situation, but the thing is that Mr. Brown is behaving no differently than the other audience members, and so the only difference that caused Mr. Brown to be arrested was the content, the political content of his speech. He was, according to the district court, laughing derisively at the candidate on the stage, and therefore he was the one who was arrested when there was a sort of larger disturbance, which may have been instigated by his laugh, but it also may have been instigated by the Because any reasonable officer in the city of St. Louis must have known how tinker and the cases applying it limit the application of the city's... Well, let me, I want to push you a little bit more. Select, you know, you might have a selective prosecution claim. You know, I don't necessarily disagree with you that there was arguable probable cause to arrest the other guy who was screaming in your client's face it looked like. Again, I don't know what he was saying, but does that necessarily mean that there's not arguable probable cause to arrest your client just because the other wasn't arrested? I think that there is not probable cause to arrest my client for peace disturbance because if one speaker's speech doesn't rise to the level of peace disturbance and we can't tell, there's nothing to differentiate, you know, in the evidence in the record between Mr. Brown and anybody else who was standing and screaming, but only Mr. Brown was arrested. I don't disagree. That could be a selective enforcement or selective prosecution claim, but suppose we change the facts ever so slightly and now all the people who are yelling at each other are in front of this court. Would you, I mean, does that make any difference for purposes of probable cause with regard to your client? I think it does, Your Honor, because the, that would be a, the police are, are interpreting the, the, the ordinance when they, when they and waving your arms, regardless of, of the content of the speech, then they would arrest everyone. But if they apply it inconsistent with tinker and in really with, with equity and they, they don't, they do differentiate between similar speakers. You know, I think that this is very akin to the, the Nevis exception where we have similarly situated speakers, people who are standing and yelling and waving their arms. Most of them were not arrested. One of them was, and that goes to, you know, that, that has to do with a pretextual arrest and they're being a probable cause to believe that the person has committed some other crime. But I think that, that the, the reasoning applies here just as well to your question. You know, if you look at the video, it appears to me that what you've got going is there's this laugh, right? Which would not have been able to be picked up at he'd be, had he been any further away from the, from the podium than he was. I mean, if you really look at it, it's proximity that causes that to happen. And immediately in the aftermath, there's not much going on until the speaker decides to call out your client and then makes other inflammatory statements. The crowd deteriorates into a problem. I mean, it seems like there's no question that getting him out of there so he doesn't get himself beat to death is probably perfectly okay. And then getting them out to, but when they arrest your client at that point, the one thing that I did find kind of fascinating is as he's moving away, he's obviously screaming as loud as he can and nothing is being picked up at all. Right? And so the idea that he's created this fighting environment with the entire group seems factually in dispute because it does as though the fighting environment wasn't made by the horse laugh. The fighting environment was created by the speaker. Right? And he's left just completely, nobody takes any effort to stop him from behaving in a manner which is inciting a riot. Nobody takes any effort to arrest any of the people around him. And I get where maybe that's just selective, you know, prosecution, but it seems to me that the laugh itself is really just a sideshow because everything that happens, happens as a direct and proximate result of the conduct of Mr. Trump and no one else. I think that's exactly right, Your Honor. And I think that that gets at two issues that we raised in our brief. First, the district court makes a lot of what Mr. Brown does after being around, but that's not relevant to whether there was probable cause that existed when Mr. Brown was arrested. Anything that he does after that has no bearing on the moment that he was arrested. And second, Your Honor, I think that your point gets to our second place where we find error with the district court's decision, which is this implementation of a heckler's veto. Essentially, what happened here was Mr. Brown laughed and that was interpreted as derisive speech that the speaker and the audience disagreed with, so they began to heckle him. They began to threaten him with violence, allegedly, and he was arrested. He was removed. The heckler's veto was sanctioned by the police and then it was sanctioned by the district court when it found that there was probable cause to arrest him. Who was, I mean, I don't actually find that all that persuasive because who was the heckler's veto here? I mean, arguably it was your client by talking, it was the other rally goers by talking over Trump. I mean, I'm just not sure that gets you very far because heckler's veto is normally the one odd person in the room that's trying to talk over the invited speaker. At least that's one form of the heckler's veto. So I'm just not sure that gets you very far in my eyes. I think that's right, Your Honor, but people can be heckled whether they're standing on stage or whether they're, you know, speaking, having a private conversation. So it's not, Mr. Brown may or may not have been, you know, quote-unquote heckling the speaker or the audience. And, you know, I think heckling is probably a weak verb to use based, you know, to describe what happened after everything happened. But what these are are people who disagree with Mr. Brown's speech. They're standing up and they're saying, we are going to be violent or we are being violent as a result of what you said because we disagree with it. And the police said, yes, let's remove the person with whom everyone disagrees. When do you think he was seized, your client? Do you think he was seized at the moment the officers descended upon him when he was standing face to face with the other rally goer or did it happen when they were escorting him up the aisle or did it happen when he was taken to jail? I think it happened when the at that point he wasn't free to leave. And so he had been seized. So, and that brings up an interesting point. So, you know, normally we think, and this gets, I think Judge Erickson was asking about this. They probably have, if somebody is disrupting a private event, you probably have the ability, even if you're a state actor, to remove somebody from that private event so that the private event can go on. And I'm just wondering if that sort of a different story. And that's why I was asking the question, but I wonder if the seizure might have been reasonable inside the auditorium. We're prepared to concede. I think your honor, that the police would have been reasonable to remove Mr. Brown from the situation to prevent this potentially dangerous situation from escalating. However, they arrested Mr. Brown, they charged him with a crime and where the, you know, whether or not the speaker was a state actor or not, they arrested him and they charged him with a crime. And so the speaker could have said, I'm exercising my right as the private party who's in charge of this space to ask that he be removed. And if he had removed, there's the possibility he could have been charged with trespassing, but he wasn't arrested for trespassing. He wasn't arrested for refusing to leave. He was arrested for laughing and then standing up and waving his arms. And if the court will permit me, I'd preserve the rest of my time for rebuttal. Very well. Mr. Pratt, you may proceed. Good morning. May it please the court. Good morning. My name is Lawrence Pratt and I am here on behalf of the appellees. I think that to a certain degree, appellant's argument misses the mark and misses the point. The real issue in this case is, did officer Bettingheimer and officer Corte, the two police officers that executed the arrest, have probable cause to arrest the appellant? That is the real issue in this case. Now, with, and I'd like to talk about that more, but with regard to the issue with the video, appellant represents that it's ambiguous. I would take issue with that, but that's not really relevant because there is ample other evidence in the record as to the appellant's conduct. Testimony of officer Bettingheimer, testimony of officer Corte, the testimony of a third party uninvolved witness, Mark, I'm blanking on his name, Goodman, that was sitting right next to the appellant that saw and heard everything. Now, what you learn and what you find when you look at the specific record in this case is that on March 11th, 2016, then presidential candidate Donald Trump arranged for a rally at the Peabody Opera House. The St. Louis Metropolitan Police Department detailed police officers to provide security, two of which were officer Bettingheimer, officer Corte. During the course of this rally, they testified under oath during their deposition that they heard a loud, continuous laugh. And then at that point, they saw commotion at the front of the auditorium, not far from the stage. That is what attracted their attention and motivated them to go to the location of the commotion. Was the laugh enough to violate the statute or was the statute, at least probable cause, probable cause of violation, or was it later when they were apparently screaming at each other? The laugh was not sufficient to violate the ordinance. It is the appellant's conduct afterwards that violates the ordinance. When the officers arrived at the particular location, it is useful to note what they testified that they found. They saw the appellant nose to nose, according to the witness, screaming obscenities in the face of a man the appellant said approached him in an aggressive and violent manner, screaming obscenities and screaming to the surrounding crowd and to the candidate who was but two rows away on the stage. Now, when one looks at the actual text of the ordinance, and what we're talking about here is St. Louis Municipal Ordinance 1546030, which is colloquially referred to as the Disturbing the Peace Ordinance, the material language reads like this. Persons engaged in noisy, riotous, or disorderly conduct, or by violent, tumultuous, offensive, or obstreperous conduct or carriage, or by loud and unusual noises, or by unseemly, profane, obscene, indecent, lewd, or offensive language calculated to provoke a breach of the peace. And at this point, as has been mentioned by City of St. Louis versus Tinker, breach of the peace can be equated with fighting words and violence. The statute or the ordinance goes on to say, so that others in the vicinity are disturbed thereby shall be guilty of a misdemeanor. The question is, when one looks at the requirements of probable cause, which are, in summary, that as in this case, a police officer, when looking at the totality of the circumstances in the specific locale at the time, does that officer have reasonable grounds to assume that, in this case, the appellant violated a law, in this case, the Disturbing Peace Ordinance. When you look at the testimony of Officer Bettingheimer and Officer Corte, it is clear that they thought that the appellant, his conduct vis-a-vis the man he was screaming at, and then his subsequent conduct was calculated to provoke a breach of the peace. Now, there's been discussion about the appellant's intent. That's irrelevant. It is not the measure of probable cause what the appellant's actual intent was. It is from the perspective of the cause must be evaluated. And was the conclusion they drew reasonable? In this case, all of the evidence, including the video, or if you exclude the video, supports a reasonable conclusion that the appellant intended to disrupt this meeting and intended to, or his behavior was calculated to provoke a breach of the peace, and he nearly did. You look at the testimony of the police officers, but you also have to look at the testimony of the appellant himself. He said he knew that Trump rally attendees had a penchant for violence. He knew that he saw three men stand up, approach him, and that he believed them to be aggressive and violent. And then what did he do? He got up from his seat, approached the lead man, and began screaming obscenities in his face. Is it reasonable to conclude that that behavior was calculated to provoke a breach of the peace? Given that there is no evidence, uncontested facts from the record offered by the appellant to the contrary, I think we must accept that as the case. Likewise, the witness, Mr. Goodman, who is sitting right next to the appellant, said that he saw the three men approaching. He saw that they were angry and that he felt that violence was imminent. And it is from him that the quote that appellant and the lead man were standing nose to nose, as we see in the video, was the court wrong in considering the video? There has been no precedent cited that says in the abstract the court cannot look at the video or consider it at all. One issue in this case is that there is the implied position of the appellant that there is a disagreement as to what happened after the laugh. But there is not. No one contests what the conduct of the plaintiff is. I'm sorry, what the conduct of the appellant was. The closest the appellant ever comes to doing that is when he is questioned about the specific scene from the video. He says, I don't know. I might have talked to him. I don't know. That is not a refutation of the direct and specific testimony of the two police officers and of the witness. So the facts are in agreement as to the appellant's conduct that day. Again, is it reasonable to believe that given what the officers saw the appellant do, that it was reasonable to assume that he violated the ordinance? Whether he actually did or not is irrelevant. That is not has no bearing on probable cause. But was it reasonable to believe that they thought he had at the time? With regard to the appellant's actual claims, not only is there probable cause which negates a necessary element of everyone, both the federal 1983 Fourth and First Amendment claims and the state malicious prosecution and false arrest claims, but qualified immunity applies to all of these appellees, as does official immunity. There is no contest that these particular police officers were governmental employees exercising discretionary functions. The case law is clear. The decision whether to arrest someone or not is squarely in the realm of discretion. Counsel, did the district court consider the case from the standpoint of qualified immunity? Or did the court only consider whether there was the constitutional violation aspect? Because I just didn't see any reference to qualified immunity. And for example, a reference to whether even if there was a violation, the right was clearly established. Your Honor, the court does not spend any time discussing or just discusses in passing the immunities. It spends most of its time talking about probable cause. But it grants the appellee's motion for summary judgment, which covers all of these areas, across the board. The court does not delineate between them. As this is a de novo review, then this court can take a look at those as well, if it so chooses to do. But Your Honor is correct. That is the issue that most particularly and clearly caught the district court's opinion. However, I would submit... But the appellee's raised, the appellee officers raised qualified immunity. That is correct, as well as official immunity for the state law claims. And the court granted the motion in its entirety. Here, there is absolutely no reference, really, by the appellant of the requisite specific, clearly established, constitutional right that they claim has been violated. They throw around the First Amendment, the Fourth Amendment, but the case law is clear. The reason over case lays out for us that it has to be specific, a specific right. It has to be particular to the facts of this case. It can't be broad or vague. That's not even addressed. That's only relevant if it's addressed. These immunities apply if the prerequisites exist. Government actors exercising discretion. It is the duty of the appellants to show that these immunities do not apply, and they have wholly failed to do that. It is for that reason that we ask the court to affirm the district court's grant of summary judgment in this case. Thank you, Your Honors. All right. Thank you. Mr. Mobley, a question before you begin your rebuttal. With respect to Officer Steiger, it was my understanding that his role was preparing the offense report and that he didn't participate in the arrest. So would you concede that at least he should be out of the case? Yes, we would concede that, Your Honor. All right. Thank you. Now, it's important, I think, here to note that the district court claimed to be able to decide this case based solely on the video. And if we expand the universe of evidence that we are In fact, the eyewitness whose testimony was discussed earlier testified that he never saw Mr. Brown give any indication of violence. The district court did discuss that eyewitness and his testimony in its opinion, in its memorandum, but it didn't mention his testimony that Mr. Brown was never violent. And that basically is, that's Mark Comfort, right? Yes. And in his deposition, basically, you know, they have some apparent relationship because they're alumni of the same school. And that's really, they hadn't known that. They figured that out when they were there, which is neither here nor there. But his testimony is pretty clear that what he saw were a lot of guys that were agitated, a lot of people that were upset, but he never heard or saw Mr. Brown do anything that could be considered violent, right? And so that's out there. But you do have officers who say that when they got there, they observed, you know, a verbal altercation going on that involved the screaming of epithets of some sort. Now, isn't that, wouldn't that be enough to be a fighting words problem at that particular moment? Particularly now that they've conceded that the laugh itself is not a problem and that the problem arose at some point afterwards, right? Again, I think that the problem that we then run into is that only Mr. Brown was arrested. You know, again, we don't know the content of what they were yelling. We only know that they were yelling. And so the only, we're left to guess at how the officers differentiated between the various audience members who were standing and Mr. Brown. And if we look at the officer testimony, they were confronted with a situation that's volatile and it's immediately apparent that there's some problem and that they're taking this guy into custody because what they observed, they claim is this, the kind of fighting words being spoken, right? And then we're in the land on the qualified immunity. The question is, is there at least arguable probable cause? Why is it either A, the case that there was no arguable probable cause or B, really we ought to send that back and have the district judge actually make the specific findings as regard qualified. I think that tinker is sufficient to give notice to reasonable officers in the city of St. Louis that the peace disturbance ordinance only applies to fighting words. And Mr. Brown has a right not to be arrested for conduct that doesn't violate a law. That's the right that was violated and the officers were on notice that arresting someone in contravention of tinker would violate that right. This court should not sanction the district court's usurpation of the fact finder. It should not sanction the district court's endorsement of the heckler's veto and that is why Mr. Brown respectfully requests that this court vacate the grant of summary judgment and remand the case for further proceedings. Thank you. All right. Thank you, counsel. We appreciate your arguments this morning. The case is submitted. Court will render a decision as soon as possible.